**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-02715-CMA-MJC

JUANDRIQUA PONA,

    Plaintiff,

v.

COLORADO JUDICIAL DEPARTMENT, 4TH JUDICIAL DISTRICT,

    Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Colorado Judicial Department, 4th Judicial District's ("Defendant" or "the Department") Motion for Summary Judgment. (Doc. # 8.) For the following reasons, Defendant's Motion for Summary Judgment is granted.

### I. BACKGROUND

The following facts are undisputed, unless otherwise noted. The Court will elaborate, as needed, in its analysis section.

Plaintiff Juandriqua Pona ("Plaintiff") is an African-American female. In August 2006, Plaintiff was hired by, and began working as, a Division Court Clerk for the Honorable Ronald G. Crowder, a District Court Judge for the 4th Judicial District, El Paso County, Colorado. Ultimately, Judge Crowder was not satisfied with Plaintiff's work performance. The administration of the 4th Judicial District chose to afford Plaintiff

another opportunity and granted her request to transfer to the Public Service Team of the Clerk of the Court's Office.

Plaintiff started in the Clerk's office as a Judicial Assistant on or about September 25, 2007. Her immediate supervisor was Shelia Griffin. Ms. Griffin prepared Plaintiff's first performance evaluation, signed by Plaintiff in May 29, 2008. (Doc. # 8-5.) Plaintiff received a rating of "Meets Expectations" in 8 of 9 categories, but received a "Needs Improvement" in the category of "Quality." (*Id.* at 10-11.)

In September 2008, Plaintiff applied for an announced Supervisor I position. The twenty-six applicants were screened using an objective screening tool. The top five scoring applicants were interviewed; Plaintiff was not one of them. Sheri King was ultimately selected for the Supervisor I position. In comparison to Plaintiff's one year of experience at the Department, Ms. King had over 12 years of court experience as well as previous supervisory experience. After not being selected to interview, Plaintiff filed a complaint with the Judicial Department Personnel Office on October 1, 2008. (Doc. # 8-13.) In the complaint, she alleged that she did not receive "an equal opportunity to interview for the Supervisor I position" and that the Fourth Judicial department "purposely denied [her] an interview to hire a white female whom they groomed and coached into the Supervisor position." (*Id.* at 2.) Dawn Tremblay, a Senior Human Resources Specialist for the Office of the State Court Administrator, responded to Plaintiff's complaint on February 3, 2009. Notably, the letter stated that "[t]he records will be kept confidentially and will not be shared with anyone outside of the Human Resources Department." (Doc. # 8-14.)

Ms. King became Plaintiff's immediate supervisor sometime in October of 2008, and Ms. Griffin became the Supervisor II for the team and Ms. King's direct supervisor. Ms. Griffin confided in Ms. King that she had concerns about Plaintiff's lack of attention to detail and overall work product, and that Plaintiff would repeatedly disappear from her work station for lengthy periods of time and outside of scheduled breaks.[1]  (Doc. # 8-11, ¶ 8.)  Soon after beginning in her new position, Ms. King also observed deficiencies in Plaintiff's work product.

From October 2008 through mid-April 2009, Ms. King documented numerous instances of Plaintiff's work product mistakes, late arrivals and tardiness, insubordination, inappropriate work time activities, and use of work time and equipment to conduct personal business.  (Doc. # 8-11, ¶ 11; Doc. # 8-16 at 2-10.)

In November of 2008, during a State Court Administrator's Office review of Plaintiff's e-mail usage, it was discovered that Plaintiff had forwarded what appeared to be an invoice to a personal business entitled "Keith Dorman Smith-Juandriqua Pona, Coverall Cleaning Health-Based Cleaning System" to a personal email account.  (Doc.

---

[1] Plaintiff disputes this fact, as well as numerous others.  However, the only evidence that Plaintiff submits is her own self-serving affidavit.  Notably, "generalized, conclusionary, unsubstantiated, non-personal affidavits are insufficiently to successfully oppose a motion for summary judgment."  *Stevens v. Barnard*, 512 F.3d 876, 879 (10th Cir. 1975); *see also Garret v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("we do not consider conclusory and self-serving affidavits.").  Although Plaintiff disputes that she suffered from poor work performance as observed by Ms. Griffin, Ms. King, and others, Plaintiff's basis for disputing this evidence is only that she was not contemporaneously informed of all of her various work-related performance issues.  Thus, Plaintiff contends that these performance issues were drummed up for this litigation.  As this is merely unfounded speculation and Plaintiff has no evidence to support her theory, the Court will treat the attestations from Plaintiff's supervisors concerning Plaintiff's poor work performance as undisputed.

# 8-11, ¶ 11; Doc. # 8-17.)  Plaintiff had never notified Ms. King that she was engaged in secondary employment as required by the Colorado Judicial System Personnel Rule 22, despite having knowledge of that policy.[2]  (Doc. # 8-4 at 124:5-125:10.)

On April 8, 2009, Ms. King found a printout of a personal email from Plaintiff to Keith Dorman-Smith, a former employee of Defendant, with whom Plaintiff had a romantic relationship.  The email referred to a "form JDF 1314 General Motion.doc, Revised docs."  (Doc. # 8-11, ¶ 15; Doc. # 8-16 at 10.)  The next day, Ms. King and Ms. Griffin emptied Plaintiff's recycling bin and noticed a pleading with a blue stamp stating "original."  The document was a "Motion for Review of Court Order and Amend with Corrections," and one of the parties listed on the motion was Mr. Dorman-Smith.  Later that day, Ms. King found two papers on the copier: a warranty deed pertaining to Joi Anessa L. Dorman-Smith and a letter signed by Mr. Dorman-Smith.  Based on these findings, Ms. King believed that Plaintiff was processing case information in which she had a personal interest, in violation of Judicial Department policy.

On April 13, 2009, Ms. Villalobos sent Plaintiff a letter informing her that a personnel action would be taken against her and scheduling a meeting for April 21, 2009.  (Doc. # 8-19 at 1.)  The letter documented 79 work performance issues.

The morning of April 21, 2009, Ms. King was reviewing her documentation in preparation for the meeting when she discovered that Plaintiff had filed a stipulation in her own divorce case without paying the filing fee of $105.  Additionally, Plaintiff had

---

[2]  It is uncontested that other employees in the office also used their office computer for secondary employment.  There is no evidence however that any other employee failed to notify the Judicial Department of their secondary employment.

4

never submitted a Notice to Administration of Employee Involvement in a 4th Judicial District Case (a "Notice"), as required by Judicial Department policy.  A Notice serves to memorialize the employee's conflict of interest and advises the Judicial Department of the employee's self-interest in the case.  (Doc. # 8-11, ¶ 21.)  Plaintiff contends that she gave the stipulation in her divorce case to another clerk, Ms. Claudette Ohlsen, and simply forgot to pay the filing fee of $105.  (Doc. # 9 at 3.)  However, Ms. Ohlsen denies filing the stipulation.  (Doc. # 8-25, ¶ 11.)

On April 29, 2009, Ms. Villalobos sent Plaintiff a pre-disciplinary letter and notified her that a pre-disciplinary meeting was scheduled for May 12, 2009.  (Doc. # 8-16.)  Following the May 12, 2009 meeting, on May 22, 2009, Ms. Villalobos sent Plaintiff a letter terminating her employment.  The letter stated, *inter alia*:

> Because of the seriousness of your misconduct related to inappropriate use of Judicial Department resources to conduct personal business, inappropriate processing of case information for yourself and parties in which you have a personal relationship, failure to pay appropriate filing fees on your case and in consideration of the additional job performance concerns, I have determined that termination is the most appropriate action to take in this matter.

(Doc. # 8-27.)

Plaintiff filed her Complaint on October 18, 2011.  (Doc. # 1.)  Defendant filed the instant Motion for Summary Judgment on August 28, 2012.  (Doc. # 8.)  Plaintiff responded on September 20, 2012, and Defendant replied on October 3, 2012.  (Doc. ## 9, 10.)

5

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its

pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. ANALYSIS

In this case, Plaintiff alleges that Defendant unlawfully retaliated against her in violation of Title VII by terminating her after she complained that she was denied an interview for the Supervisor I position due to racial discrimination.[3] Because Plaintiff attempts to prove her claim through circumstantial evidence, the Court applies the familiar *McDonnell Douglas* burden-shifting analysis to Plaintiff's claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011) (*McDonnell Douglas* applies to retaliation claims).

Under the *McDonnell Douglas* approach, Plaintiff must first establish a *prima facie* case of retaliation by Defendant. If Plaintiff can do so, the burden shifts to

---

[3] Pursuant to her Complaint, Plaintiff also brought a discrimination claim. (Doc. # 1.) However, in her Response to the Motion for Summary Judgment, Plaintiff has withdrawn her discrimination claim. (Doc. # 9 at 6.) Thus, the only remaining claim is her retaliation claim.

Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Crowe*, 649 F.3d at 1195. If Defendant articulates such a reason, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered reason is pretextual. *Id.*

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she was engaged in protected activity; (2) suffered an adverse employment action; and, (3) there was a causal connection between the protected activity and the adverse action. *Mathews v. Denver Newspaper Agency, LLP*, 649 F.3d 1199, 1210 (10th Cir. 2011).

Although Defendant assumed "for the sake of argument that [Plaintiff] can establish a prima facie case of retaliation," the Court finds that Plaintiff has failed to present any evidence showing that her termination was causally related to her complaint of racial discrimination.[4] *See Petersen v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1189 (10th Cir. 2002) (finding that the plaintiff had failed to establish a *prima facie* case of retaliation because she failed to provide evidence establishing that the adverse employment action was motivated by her "good faith belief" that Title VII had been violated).

First, the Court notes that Plaintiff filed her formal complaint over seven months before her employment was terminated. As such, the temporal proximity alone between

---

[4] Plaintiff engaged in protected activity under Title VII when she filed a formal complaint with the Judicial Department Personnel Office on October 1, 2008. (Doc. # 8-13.) *See Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors."). Plaintiff also suffered an adverse employment action when she was terminated. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).

the protected activity and the adverse employment action does not create an inference of retaliatory motive. *See Petersen*, 301 F.3d at 1190 (complaint filed six months before denial of promotion was not sufficient to show retaliatory motive); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (one cannot infer retaliatory motive solely on basis that firing occurred three months after protected activity). Furthermore, Plaintiff points to no evidence that anyone involved in the decision to terminate her employment was aware that she had filed a formal complaint regarding the interview process for the Supervisor I position. The formal complaint was not addressed to anyone involved in the decision making process, and the response to her complaint stated that the "records will be kept confidentially." (Doc. # 8-14 at 2.) It is axiomatic that "[u]nless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee **because** of the protected conduct." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007) (emphasis in original); s*ee also Peterson*, 301 F.3d at 1188-89. Although Plaintiff contends that the termination of her employment was unjustified, there is not a single shred of evidence linking her termination with her protected activity. As such, Plaintiff has failed to meet her burden of establishing a *prima facie* case.

Assuming *arguendo* that Plaintiff had established a *prima facie* case of retaliation, Defendant has alleged a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff has not shown that Defendant's reason is pretextual. Pretext can be demonstrated by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence

and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation omitted). However, "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment," *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1998), and "a plaintiff's allegations alone will not defeat summary judgment." *Morgan*, 108 F.3d at 1324.

Although Defendant has set forth numerous issues that contributed to its decision to terminate Plaintff's employment, the principal reason given by Defendant is that Plaintiff processed a stipulation in her own divorce case, in direct violation of a Judicial Department policy. (*See* Doc. # 10 at 5-6) (Plaintiff's "processing of a pleading in her own divorce case, compounded by her failure to pay the filing fee, posed a threat to the judicial system's integrity."); (Doc. # 8-23.). Certainly, the Judicial Department has a legitimate interest in preserving the integrity of the judicial process, which involves ensuring that conflicts of interest among its staff are identified, isolated, and mitigated.

Plaintiff has presented no evidence that Defendant's reason for terminating her employment was pretextual; rather, Plaintiff relies solely on her own conjectural allegations. Although Plaintiff asserts that she gave the stipulation to Ms. Ohlsen to process, she offers no evidence beyond her own self-serving affidavit to support this assertion. Moreover, Plaintiff's assertion is directly contradicted by Ms. Ohlsen's who attests that she never filed the stipulation for Plaintiff. (Doc. # 8-25, ¶ 11.) In any event, it is ultimately irrelevant as far as this case is concerned whether or not Plaintiff actually filed the stipulation in her divorce case. What matters is whether there is any genuine

dispute regarding the sincerity of Defendant's belief that Plaintiff had filed the stipulation. *See McKinight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (employer's "belief would not be pretextual even if the belief was later found to be erroneous."). Plaintiff has presented no evidence suggesting that Defendant did not have a good faith belief that Plaintiff had filed the stipulation in her own divorce case. Thus, Plaintiff has not met her burden of demonstrating that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff's employment was pretextual.

## IV. **CONCLUSION**

Based on the foregoing, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 8) is GRANTED and this case is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Final Trial Preparation Conference set for December 21, 2012, and the three-day Jury Trial set to commence January 14, 2013, are VACATED.

DATED:  December   06  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge